UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELSA LORRAINE BRIGGS,
Plaintiff,
v.
COMMISSIONER OF SOCIAL SECURITY,
Defendant.

No. 2:25-cv-3488-EFB (SS)

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. ECF No. 1. Pending before the court are the parties' cross-motions for summary judgment. ECF Nos. 8, 10.[1] For the reasons provided below, plaintiff's motion is granted and defendant's motion is denied.

## I. Background

On January 7, 2022,[2] plaintiff filed an application for Social Security Disability Insurance (SSDI) disability benefits under Title II of the Social Security Act. Administrative Record (AR)

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1). ECF No. 6.

[2] The decision denying plaintiff's Title II application states that it was filed on January 7, 2022. AR 17. Elsewhere, the record indicates that this application was submitted to the Social Security Administration on April 16, 2022, or on May 12, 2022. *See* AR 216-224. Nonetheless, the actual application date appears immaterial to the issues raised in the pending motions.

17.[3] She alleged disability due to depression, anxiety, hypertension, adenoma, diabetes, and obesity.[4] AR 219. Plaintiff's application was denied on October 13, 2022, AR 69, and her request for reconsideration was denied on July 24, 2023. AR 86; *see* AR 70-85.

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) on this adverse decision. AR 109-136. The ALJ held a hearing on February 4, 2025, at which plaintiff testified. AR 31-56, 151. By written decision on March 28, 2025, the ALJ found plaintiff not disabled relative to her claim for SSDI benefits. AR 14-26.

Plaintiff sought review of this decision by the Appeals Council. AR 177-178. On November 7, 2025, the Appeals Council denied review, making the ALJ's decision final for purposes of judicial review. AR 1-6. Plaintiff initiated this action on December 3, 2025.

## II. Legal Standard

### A. The Disability Standard

In plaintiff's complaint, she seeks review of the Commissioner's denial of her application for disability insurance benefits under Title II, pursuant to 42 U.S.C. § 405(g), ECF No. 1, and asserts the same in her motion for summary judgment. ECF No. 7 at 5. The complaint raises three assignments of error in the ALJ's findings. ECF No. 1 at 2. Notwithstanding this, in her argument in support of her motion for summary judgment, plaintiff raises four, more specific, assignments of error. ECF No. 7 at 9.

To qualify for disability insurance benefits under Title II of the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

---

[3] Defendant lodged the administrative record on February 2, 2026. ECF No. 7.

[4] Plaintiff's initial disability application at the State agency level claimed anxiety, hypertension, adenoma, diabetes, and obesity. AR 71.

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). At each of these five steps, "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In steps one through four, the burden of proof is on the claimant. *Ford*, 950 F.3d at 1148. A claimant establishes a prima facie case of qualifying disability once he has carried the burden of proof from step one through step four. *Id*.

Before making the step four determination, the ALJ first must determine the claimant's RFC. *Batson*, 359 F.3d at 1194; *see* 20 C.F.R. § 404.1520(e). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 404.1545(a). A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See*

20 C.F.R. § 404.1527(d) (RFC is not a medical opinion); 20 C.F.R. § 404.1546 (identifying the ALJ as responsible for determining RFC); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g) *Batson*, 359 F.3d at 1194. If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled. *Id.*

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart (Thomas)*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co. (CalPortland)*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *superseded in part by statute on other grounds,* 20 C.F.R. § 404.1529. Even if the ALJ has erred, the Court may

not reverse the ALJ's decision where the error is harmless, *Stout*, 454 F.3d at 1055-56, and the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

In conducting its analysis, the "reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The court may not affirm the ALJ on a ground upon which she did not rely; rather, the court may review only the reasons stated by the ALJ in her decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Further, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

## III. The ALJ's Findings of Fact and Conclusions of Law

In her March 28, 2025 decision, the ALJ found plaintiff not disabled on her application for benefits under Title II. The ALJ issued findings as follows:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2025.
>
> 2. The claimant has engaged in substantial gainful activity through January 5, 2022 (20 CFR 404.1520(b) and 404.1571 *et seq*.).
>
> 3. Thus, the claimant has not been under a disability, as defined in the Social Security Act, from February 11, 2019, through January 5, 2022 (20 CFR 404.1520(b)).
>
> 4. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.
>
> 5. The claimant has the following medically determinable impairments: diabetes mellitus, hyperlipidemia, hypertension, obesity, sleep apnea, depression, and anxiety (20 CFR 404.1521 et seq.).
>
> 6. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 et seq.).
>
> 7. The claimant has not been under a disability, as defined in the Social

> Security Act, from February 11, 2019, through the date of this decision (20 CFR 404.1520(f)).

AR 19-25.

**IV. Analysis**

Plaintiff raises four issues on review. First, that the ALJ erred in concluding that plaintiff had no severe impairments and denying the claim at step two. ECF No. 8 at 12-18. Second, that the ALJ failed to provide specific, clear, and convincing reasons for discounting plaintiff's allegations of dysfunction. *Id*. at 19-22. Third, that the ALJ improperly evaluated Dr. Ali's opinion. *Id*. at 22-24. Fourth, that that the ALJ erred by ignoring the opinion of psychiatric mental health nurse practitioner (PMHNP) Michael Nevarez. *Id*. at 16-18.

Because plaintiff's second, third, and fourth issues are each subsumed in the broader argument that plaintiff makes in her first issue, the court begins its analysis with those specific issues and thereafter addresses the remaining points in plaintiff's broader first argument. The court concludes that plaintiff has shown she is entitled to summary judgment and remand on the first, second, and fourth of her claimed grounds.

**A. Relevant Step Two Legal Standards**

At step two, the ALJ must determine whether the claimant had severe impairments during the period for which she seeks disability benefits. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including "(1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

////

The purpose of step two is to screen out frivolous claims by "identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). As such, to succeed at step two, a claimant need only make a de minimus showing to establish that her impairment is severe within the meaning of the regulations. *Glanden v. Kijakazi*, 86 F.4th 838, 843-44 (9th Cir. 2023); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *see also Bowen*, 482 U.S. at 147.

An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290; *see also Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001).

**B. The ALJ's Analysis Of Plaintiff's Allegations Of Dysfunction**

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing evidence for discounting her allegations of dysfunction due to a mental impairment. ECF No. 8 at 19. Since plaintiff alleges she was disabled, in part, by the mental impairments of depression and anxiety, the ALJ was required "to follow a special psychiatric review technique." *Keyser v. Comm'r.*, 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a). First, under this technique, the ALJ must determine whether plaintiff has "a medically determinable mental impairment(s)[.]" 20 C.F.R. § 404.1520a(b)(1). Here, the ALJ found that plaintiff had the following medically determinable mental impairments: depressed moods, panic attacks, and diminished motivation to engage in activities of daily living. AR 21.

Second, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas. 20 C.F.R. § 404.1520a(b)(2), (c)(3). Here, the ALJ rated plaintiff's limitations as: "mild" in all four broad functional areas of 1) understanding, remembering, or applying information, 2) interacting with others, 3) concentrating, persisting, or maintaining pace, and 4) adapting or managing oneself. AR 22. The ALJ concluded that:

> Because [plaintiff's] medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas, and because the evidence

> does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is non-severe (20 CFR 404.1520a(d)(1)).

AR 23. The ALJ cited plaintiff's hearing testimony as support for her statement that plaintiff "did not specifically allege[] impairment" in the area of interacting with others. AR 22. But plaintiff's testimony did describe impairments in interacting with others as well as impairments relating to the other three broad functional areas:

> Q And while you were working, any difficulty kind of with social interactions with either supervisors, co-workers or your patients? Anything like that?
>
> []
>
> A With the patients, I started to break down emotionally in front of patients and families. I had to leave the room. I would start to cry, which was unprofessional. And with co-workers, there was conflict.
>
> Q And what was the conflict involved or what does it entail?
>
> A My co-workers were complaining that I was slow. I was unfocused. New management did not agree with me.
>
> Q And then with the patients breaking down in front of them, was it particular patients or was your crying episodes just come on randomly?
>
> A It was several patients. Particularly long-term or ventilator patients. There was one patient in particular that we were going to terminally exuviate [sic] her the next day. I just broke down and cried. She was only 36 years old.

AR 42-43.

> Q All right. Is there anything else you want to tell the Judge?
>
> A Yes, In the job that I was doing, I've done, I have worked on this job for 40 years and enjoyed what I did. But towards the end, I became depressed and that depression became a liability to me and the license that I have to do my job. I was making poor clinical decisions in stressful situations and as a First Responder I was not responding and focusing like I needed to. I became a liability to my employer and to the patients that I serve. And I take my patients very seriously, and that has really alarmed me that my function deteriorated to that point. I feel like I've been broken and I don't know if there is a fix. I keep following my doctor's advice and going further with my medication. I am on Ketamine treatments now which has helped but not to the point where I can function in that role. That I can function again for those many years. I can't function in that capacity anymore.

AR 50-51.

Plaintiff argues that her subjective evidence of dysfunction may not be summarily rejected "based solely on a lack of objective medical evidence fully corroborating the alleged severity of her impairments." ECF No. 8 at 19 (citing *Burch*, 400 F.3d at 680). The objective evidence cited by the ALJ included examination records showing that plaintiff "was consistently alert and oriented (4F/23, 5F/3), that her behavior was within normal limits (4F/23, 6F/35), and she had adequate hygiene and/or grooming (1F/43, 6F/35)."[6] AR 22. The ALJ also considered a third party report from plaintiff's husband, and that plaintiff "was able to maintain a conversational exchange with her representative and the [ALJ] throughout her hearing." AR 22 (citing 3E/6-9). The ALJ discussed in some detail the assessments of state agency psychological consultants, and consultive examiner Michael Molyn, Psy.D.[7] AR 28-29. The state consultants opined that plaintiff had only mild limitations in the four broad functional areas, and the ALJ found that their opinions were supported by examination exercises such as performing a serial 7 exercise. *Id*.

But the evidence cited by the ALJ is not so inconsistent with plaintiff's hearing testimony as to show a failure to meet the step two de minimis standard. *See Webb*, 433 F.3d at 688 (claimant's physicians did not altogether dismiss his complaints or to create a "total absence of objective evidence of severe medical impairment" at step two).

And plaintiff points to other clinical evidence in the record that the ALJ did not discuss that supported plaintiff's allegations of moderate anxiety and moderate to severe depression over a period of years, and that would indicate more than mild impairment in the four broad functional areas of the paragraph B criteria. ECF No. 8 at 14-15 (citations omitted); *id*. at 19. For example, while the ALJ cited mental status examinations by plaintiff's mental health care providers (Nevarez and Tidiane) that showed plaintiff was alert and oriented with normal mood and intact recent and remote memory, AR 22, the ALJ omitted to mention their simultaneous clinical assessments that plaintiff had depressive disorder that was characterized in some instances as

---

[6] The ALJ used the formatting convention that identified documents in the record by Exhibit Number/Page Number (such as 2F/3). Where appropriate, the court will provide parallel cites cross-referencing the pagination in the AR.

[7] Plaintiff notes that Molyn "conducted a one-time examination and reviewed only one treatment note from 2020." ECF No. 8 at 16.

mild, but at other times was described as moderate and/or major.[8] The ALJ also did not include consideration of other clinical assessments by plaintiff's mental health care providers between May 8, 2019 and October 25, 2024 that consistently assessed recurrent depressive disorder and that was even characterized as severe in some instances. AR 543 (6F/65) (October 18, 2022 assessment of Amy Ellis, M.D.[9]); *see generally* AR 481-627 (6F).

The ALJ's conclusion that plaintiff's mental impairment is non-severe is not supported by substantial evidence in the record, because the ALJ failed to consider significant medical records and hearing testimony. Based on the forgoing, the court finds that the ALJ failed to properly evaluate the severity of plaintiff's impairments and the medical opinion evidence. Accordingly, the matter must be remanded to allow for proper consideration of the medical evidence and plaintiff's testimony. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted); *see also Glanden*, 86 F.4th at 843 ("properly denying a claim at step two requires an unambiguous record showing only minimal limitations").

**C. The ALJ's Consideration Of Nevarez's Treatment Records**

Plaintiff argues that the ALJ erred by ignoring the opinion of her mental health treatment provider Neveraz. ECF No. 8 at 24. As already discussed in part, Nevarez provided a series of assessments between February 13, 2023 and February 20, 2024. AR 496-536. The ALJ cited

---

[8] On September 20, 2023, PMHNP Nevarez set forth a treatment plan to address plaintiff's "[d]epression, established problem, moderate to severe in nature and worsening" and her generalized anxiety disorder as an "established problem, moderate in nature and unchanged." AR 521 (6F/42). On November 29, 2023, Nevarez made a similar assessment except classifying plaintiff's depressive disorder as "mild" at that time. AR 513 (6F/35)).

On July 24, 2024, PMHNP Erica Tidiane assessed plaintiff's "major depressive disorder" as recurrent and mild. AR 492 (6F/14). But on October 25, 2024, Tidiane assessed that the major depressive disorder was recurrent and moderate. AR 485 (6F/7).

[9] Dr. Ellis, whose treatment records span the period from May 8, 2019 to October 18, 2022, noted on May 5, 2021 that plaintiff had "experienced multiple episodes of severe depression over the past 3-4 years" and diagnosed that plaintiff had mild depression and moderate generalized anxiety disorder. AR 582.

some observations from the treatment records created by Nevarez, including that plaintiff had a normal mood during an office visit, and intact recent and remote memory. *See* AR 22 (citing Nevarez's reports of November 29, 2023 (6F/35, AR 513) and September 20, 2023 (6F/40, AR 521). But the ALJ did not mention Nevarez's clinical assessments from those same office visits of recurrent major depressive disorder that was either mild or moderate. And the ALJ did not mention the final clinical assessment Nevarez made on February 20, 2024, that plaintiff "has a confirmed diagnosis of major depressive disorder" with "severe symptoms" and that "[d]espite treatment, [plaintiff] remains symptomatic with significant deleterious effects on quality of life and ability to function." ECF No. 8 at 24 (citing AR 499 (6F/21)).

Plaintiff argues that Nevarez is an acceptable medical source whose opinion should have been considered under *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022), and 20 C.F.R. § 404.1520c. *Id*. Respondent maintains that the ALJ was not required to provide any reason for rejecting Nevarez's statement because Nevarez did not assign any specific impairment-related limitations related to work activities. ECF No. 10 at 13 (citing *Turner v. Comm'r of Soc. Sec. Admin*., 613 F.3d 1217, 1223 (9th Cir. 2010)).

But an ALJ must not rely on selective portions of treatments notes and must read those records "'in full and in context.'" *LaRoque v. O'Malley*, 2024 WL 3355363, at *2 (9th Cir. July 10, 2024) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). The ALJ erred by discussing only Nevarez's general observations of plaintiff's mood and memory, while omitting to address his actual clinical assessments. This is another reason this matter must be remanded to allow for proper consideration of the medical evidence and plaintiff's testimony.

**D. The ALJ's Evaluation Of Dr. Ali's Opinion**

Dr. Ali is a family practice physician who performed a comprehensive internal medicine evaluation of plaintiff. ECF No. 7-1 at 423-426 (AR 419-422). The ALJ's evaluation of Dr. Ali's opinion was that:

> Consultative examiner, Shahid Ali, M.D., opined that the claimant could stand/walk for six hours in a workday and sit without limitation. The claimant could lift/carry 20 pounds occasionally, and she could occasionally climb, balance, stoop, and knee, but never crouch or crawl. The claimant would have no manipulative or environmental limitations. (3F/4). This opinion is unsupported by

> the CE's examination findings, as she had a normal range of motion and intact motor strength. (3F/3). This opinion is unpersuasive due to its inconsistency with the evidence provided at the reconsideration and hearing levels. For example, limiting the claimant to light exertional work is inconsistent with physical examination evidence showing that her heart had a regular rate and rhythm, her lungs were clear to auscultation, and her blood pressure was within the normal range. (4F/13, 5F/3).

AR 25.

An ALJ's rejection of a treating physician's medical opinion must be supported by substantial evidence. *Woods*, 32 F.4th at 787. Plaintiff argues that the ALJ failed to support her rejection of Dr. Ali's light work assessment because she did not discuss opinions from other medical sources, and she did not reconcile an alleged ambiguity in the record as to the limiting effects of plaintiff's kyphosis[10] diagnosis. ECF No. 8 at 22-23. But the ALJ did explain why she found Dr. Ali's opinion to be unpersuasive, based on inconsistency with Dr. Ali's own report of his examination as well as other examination records. Respondent points out that other treatment records "generally showed unremarkable findings, including regular heart rate and rhythm, clear lungs, and normal blood pressure, which do not suggest significant exertional or postural limitation." ECF No. 10 at 12 (citing AR 435, 465).

Dr. Ali himself did not identify any specific impairment related to the kyphosis condition. AR 421. A medical consultant at the reconsideration level of review had noted the kyphosis and recommended obtaining an orthopedic consultative examination. ECF No. 8 at 23 (citing AR 78). The ALJ is not required to obtain a consultative examination unless the record is inadequate or ambiguous. *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001). Plaintiff does not show sufficient ambiguity in the record that would require resolution by recourse to an orthopedic consultative examination. And she does not assert or explain how her kyphosis condition might have compelled the ALJ to accept Dr. Ali's light work assessment.

Plaintiff argues that a light work limitation is not inconsistent with Dr. Ali's examination findings. ECF No. 8 at 23. Plaintiff's argument merely suggests that the ALJ might have reached a different conclusion, which is insufficient to show that the ALJ's conclusion was not supported

[10] Kyphosis is "an excessive forward rounding of the upper back." https://www.mayoclinic.org/diseases-conditions/kyphosis/symptoms-causes/syc-20374205.

by substantial evidence. *See Burch*, 400 F.3d at 679.

**E. Plaintiff's Remaining Arguments Regarding the Step Two Finding**

Plaintiff argues more generally that her claim warrants full consideration beyond step two because she made the requisite threshold showing of a severe impairment. ECF No. 8 at 12-18. Her argument includes the specific issues already discussed regarding evidence of dysfunction, omission of Nevarez's clinical assessment, and rejection of Dr. Ali's light work assessment. Plaintiff makes additional arguments that: (1) the ALJ failed to consider the potential effects of plaintiff's obesity in combination with her other impairments including diabetes and hypertension; and (2) the hypothetical interrogatories the ALJ posed to the vocational expert (VE) failed to account for plaintiff's physical limitations. *Id*.

As for the first issue, the ALJ noted plaintiff's obesity among her medically determinable impairments, AR 20, and acknowledged that plaintiff's body mass index (BMI) was in excess of 30 "throughout the period relevant to this case."[11] AR 21. The ALJ did not further discuss plaintiff's obesity, alone or in combination with other impairments. Respondent points out that plaintiff's BMI was only at the low end of the range of obesity. ECF No. 10 at 4-5. But plaintiff cites *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003), for the proposition that the ALJ had a "responsibility to consider the potential effect of obesity with Plaintiff's other impairments." ECF No. 8 at 14. The Ninth Circuit Court in *Celaya* directed a remand to the ALJ to make a "step-three multiple impairment analysis that explicitly accounts for the direct and marginal effects" of the claimant's admittedly borderline-level of obesity in combination with the claimant's "admittedly" severe impairments of diabetes and hypertension and also noted that the claimant's pro se status should have alerted the ALJ to a need to develop the record on obesity. 332 F.3d at 1181, 1182-1183. At the step two stage of analysis, and especially if plaintiff does not otherwise satisfy the de minimis severity standard, the ALJ must consider whether obesity in combination with plaintiff's other ailments constitutes a severe impairment.

---

[11] Respondent cites SSR 19-2p, *available at* 2019 WL 2374244, at *2, which defines obesity as a BMI of 30.0 or higher. ECF No. 10 at 5 n.2. Respondent cites BMI measurements in plaintiff's medical records of 32.45 in August 2022 (AR 450), 32.95 in September 2022 (AR 444), 30.91 in October 2024 (ART 469), and 30.28 in November 2024 (AR 465). *Id*. at 4-5.

As for the second issue, hypothetical questions posed to a vocational expert (VE) need not include limitations that are not supported in the record. *Blansette v. Berryhill*, 721 F. App'x 715, 716 (9th Cir. 2018); *see also Engelhardt v. Colvin*, 588 F. App'x 551, 552 (9th Cir. 2014) (it was not error that a hypothetical excluded a bone protrusion in the claimant's right foot, because the record did not show that it "caused any limitations beyond those recognized in the residual functional capacity" (citing *Thomas*, 278 F.3d at 956, and 20 C.F.R. § 416.920(a)(4)(iv)-(v)); *see also* 20 C.F.R. § 404.1520(a)(4)(iv)-(v) (corresponding Title II regulation)); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (hypothetical was sufficient because it included all the limitations the ALJ found credible).

The interrogatories the ALJ posed to the VE included three hypotheticals. ECF No. 7-1 at 315-316. Plaintiff argues that the range of exertional and non-exertional limitations contained in the hypotheticals did not include her allegedly severe physical impairments. ECF No. 8 at 18. But the ALJ did not rely on the VE's answers in reaching the conclusion that plaintiff failed to show a severe impairment or combination of impairments at step two. To the extent the ALJ's interrogatories may not have adequately described plaintiff's impairments, this was harmless error at this stage of the proceedings. *See Burch*, 400 F.3d at 682-683.

For all these reasons, plaintiff has shown that the ALJ failed to show substantial evidence to support her step two finding that plaintiff lacks a severe impairment or combination of impairments. Plaintiff's argument regarding the ALJ's failure to consider obesity in combination with other impairments is an additional reason for remand for proper consideration. But plaintiff's claim regarding the interrogatories posed to the VE points out harmless error at most.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 8) is GRANTED;

2. Defendant's cross-motion for summary judgment (ECF No. 10) is DENIED;

3. This matter is remanded for further proceedings consistent with this order.

Dated: September 30, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE